UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **DEIRDRE BERRY, et al.,** | ) | **CASE NO.  1:05CV2913** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| vs. | ) | |
| | ) | **OPINION AND ORDER** |
| **THE AMERICAN RED CROSS,** | ) | |
| **GREATER CLEVELAND CHAPTER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #37) of Defendant, The American Red Cross, Greater Cleveland Chapter ("The Chapter"), for Summary Judgment.  For the reasons that follow, the motion is granted in part and denied in part.

### I. FACTUAL BACKGROUND

Defendant, The American Red Cross, Greater Cleveland Chapter ("The Chapter"), is a not-for-profit corporation , with its principal place of business in Cleveland, Ohio. Plaintiff, Deirdre A. Berry, was employed by Defendant from November 17, 1998 through June 9, 2005.  Plaintiff, Kathleen M. Dugan, was employed by Defendant from August 1990 through June 9, 2005.  Plaintiff, Bridget M. Foertch, was employed by Defendant from April 3, 1998 through June 9, 2005.  Plaintiff, Lisa S. Trudick, was employed by Defendant from October

19, 2000 through June 9, 2005. On March 29, 2005, the National American Red Cross directed each of its Chapters to require each employee and volunteer to execute a Confidential Information and Intellectual Property Agreement ("CIIPA"). Each Plaintiff refused to sign the CIIPA and was terminated as a result. The Plaintiffs have asserted a number of claims against Defendant. The Court will set out the pertinent facts when addressing each individual cause of action.

## II. LAW AND ANALYSIS

**Standard of Review**

**Motion for Summary Judgment**

A summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See, Fed. R. Civ. P. 56(c). The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F. 3d 1339, 1347 (6th Cir. 1994); and the court must view the facts and all inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F. 3d at 1347; *Lee v. Ritter*, No. 1:02-CV-282, 2005 WL 3369616, at *2 (E.D. Tenn. Dec. 12, 2005). This Court does not have the responsibility to search the record *sua sponte* for genuine issues

of material fact.  *Betkerur v. Aultman Hospital Ass'n.*, 78 F. 3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F. 2d 399, 404-06 (6th Cir. 1992).  The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323; *Lee*, 2005 WL 3369616 at *2.  Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F. 3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**Gender Discrimination**

Plaintiffs, Deirdre A. Berry ("Berry"), Kathleen M. Dugan ("Dugan"), Bridget M. Foertch ("Foertch"), and Lisa S. Trudick ("Trudick"), claim Defendant, the Greater Cleveland Chapter of the American Red Cross ("the Chapter"), discriminated against them, as compared to males with comparable qualifications or in comparable positions, by affording Plaintiffs less favorable pay, terms, conditions and privileges of employment.  Ohio Revised Code Section 4112.02(A) provides: it shall be an unlawful discriminatory practice for an "employer, because of the * * * sex * * *of any person, to discharge without just cause, * * * or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."  The Ohio Supreme Court holds federal case law interpreting Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, is applicable to cases involving alleged violations of R.C.

Chapter 4112. *Plumbers & Steamfitters Comm. v. Ohio Civil Rights Comm.*, 66 Ohio St. 2d 192, 196 (1981).

A complainant must bear the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The *McDonnell Douglas* analysis requires a plaintiff to show: (1) she was a member of a protected class, i.e., female; (2) she was qualified for her position; (3) she was discharged or suffered an adverse employment action; and (4) a comparable, unprotected employee, in this case, a male, was treated differently. Where there is no direct evidence of discrimination, the plaintiff must show the "comparables" are "similarly situated in all respects." "The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated;' rather, as this court has held, ... the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the relevant aspects.'" *Ercegovich v. Goodyear Tire & Rubber Company*, 154 F. 3d 344, 352 (6th Cir. 1998).

Plaintiffs identify three male employees, which they claim were similarly-situated, yet treated more favorably — Eugene Blackwell, Hugh Harrison and Jeff Dodge. Blackwell was not in the Education & Training ("E&T") division in which Plaintiffs worked. He was an Area Service Office Manager, who was terminated in a June 2003 general layoff. Harrison was not a sales person; but a manager of service delivery. He was not assigned personal sales goals nor commission plans. Dodge, on the other hand, was hired as an account manager in E&T in March of 1999. Similarly, each Plaintiff, during fiscal year 2004-2005, was designated as an "account manager" or assigned the same responsibilities as an "account

manager." Therefore, the Court finds Jeff Dodge is the only appropriate comparable for the gender discrimination analysis.

Plaintiffs claim Dodge was given more attainable goals and was assigned more lucrative accounts, specifically manufacturing and business services. According to Plaintiffs, Dodge was free to come and go as he pleased and to take extended lunch breaks. He was not required to work on special projects or to assist his female counterparts in event-related activities, such as purchasing supplies, setting up or cleaning up. When he took medical leave, he was not required to continue monitoring his accounts, whereas the female account managers contend they were.

Even assuming these contentions to be true, Plaintiffs fail to sustain their burden of proving the comparable unprotected employee, Dodge, was treated more favorably than they were in all relevant aspects. For instance, Plaintiffs make no claim that they attempted to take long lunches or to come and go as they pleased, yet were disciplined for engaging in that conduct. Plaintiffs admit that accounts were re-assigned when there was a vacancy; and if someone was hired as a replacement, he *or* she would assume their predecessor's accounts. For the most part, if Dodge had better accounts, they were inherited from his female predecessor. Plaintiffs insist Dodge was favored; but he was the only employee to be issued a Performance Correction Notice by the E&T Director. With regard to salaries and commissions, although Dodge exceeded Plaintiffs in the early part of his tenure; he received less than Berry and Dugan in 2002, 2003, and 2004.

Viewing the evidence in a light most favorable to Plaintiffs, they have failed to demonstrate a *prima facie* case of gender discrimination. Summary judgment is, therefore,

granted on the gender discrimination count of the First Amended Complaint.

**Pregnancy Discrimination**

Plaintiffs, Bridget M. Foertch ("Foertch") and Lisa S. Trudick ("Trudick"), claim they were discriminated against because of their pregnancy, in violation of Ohio Revised Code Section 4112.02(A), by exposure to less favorable terms and conditions of employment, and by exposure to a hostile working environment.  Foertch had two maternity leaves from her employment with the Chapter.  The second leave, relevant to the allegations in the Plaintiffs' First Amended Complaint, was from October 5, 2004 through January 7, 2005.  Trudick was on maternity leave from March 15, 2005 through June 8, 2005.

Ohio Revised Code Section 4112.02(A), like Title VII of the Civil Rights Act of 1974, prohibits an employer from discriminating against an employee on the basis of sex, including "pregnancy, any illness arising out of and occurring during the course of pregnancy, childbirth, or related medical conditions."  R.C. § 4112.01(B).  As previously noted, the Ohio Supreme Court holds, "federal case law interpreting Title VII ... is generally applicable to cases alleging violations of R.C. Chapter 4112."  *Kocak v. Cmty. Health Partners of Ohio, Inc.*, 400 F. 3d 466, 471-72 (6th Cir. 2005) (quoting *Plumbers & Steamfitters Joint Apprenticeship Comm'n* v. *Ohio Civil Rights Comm'n*, 66 Ohio St. 2d 192 (1981)).

To establish a *prima facie* case of pregnancy discrimination, the plaintiff must show that "(1) she was pregnant, (2) she was qualified for her job, (3) she was subjected to an adverse employment decision, and (4) there is a nexus between her pregnancy and the adverse employment decision."  *Prebilich-Holland v. Gaylord Entertainment Company*, 297 F. 3d 438, 442 (6th Cir. 2002) (quoting *Cline v. Catholic Diocese of Toledo*, 206 F. 3d 651, 658 (6th

Cir. 2000).  In Title VII actions, " a plaintiff may establish discrimination either by introducing direct evidence of discrimination or by proving inferential and circumstantial evidence which would support an inference of discrimination." *Kline v. Tenn. Valley Auth*., 128 F. 3d 337, 348 (6th Cir. 1997).  When there is direct evidence, a Title VII plaintiff "does not have to proceed under the *McDonnell Douglas* burden-shifting framework that applies to circumstantial evidence cases." *Christopher v. Stouder Mem'l Hosp.*, 936 F. 2d 870, 879 (6th Cir. 1991).  "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *DiCarlo v. Potter*, 358 F. 3d 408, 415 (6th Cir. 2004) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp*., 176 F. 3d 921, 926 (6th Cir. 1999).  "Consistent with this definition, direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *DiCarlo, id.* (quoting *Johnson v. Kroger Co.*, 319 F. 3d 858, 865 (6th Cir. 2003).  Furthermore, "an employee who has presented direct evidence of improper motive does not bear the burden of disproving other possible nonretaliatory reasons for the adverse action.  Rather, the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive." *DiCarlo, id.* (quoting *Weigel v. Baptist Hosp. of E.Tenn.*, 302 F. 3d 367, 382 (6th Cir. 2002)).

Plaintiffs, Trudick and Foertch, identify several objectively offensive comments made by Kathleen Marsh, Sales Director in the Education & Training ("E&T") division of the Chapter.  Defendant acknowledges Marsh made insensitive remarks regarding pregnancy

during the Spring of 2004.  In late February of 2004, Marsh asked Foertch if the frustration she was expressing about her job responsibilities was "hormonal."  Marsh made statements, within Foertch's hearing, about twelve weeks' leave being too much and unnecessary.  In April of 2004, when Foertch was in Marsh's office, Marsh interjected "did I ever tell you how much I hate pregnant people?"  Marsh discussed with Trudick, after July of 2004, how she could not understand why pregnant women carry on like they do and need twelve weeks of maternity leave.  Pam Oliver, who became the new Director of E&T in August of 2004, told Foertch that Marsh indicated she was "sick and tired of all these pregnant people."

Plaintiffs, Trudick and Foertch, complained to the head of Human Resources/ Chief Operating Officer, Suzanne Seifert.  These Plaintiffs indicated their performance goals were modified and made more stringent after they gave notice of their pregnancies.  The goals and commission formulas were seemingly more generous and lenient for the male account managers.  On March 4, 2005, Trudick received a verbal warning regarding her performance.  Foertch had been in charge of the sales of automatic external defibrillators ("AED's").  After Marsh was informed of her need to take maternity leave, Foertch was removed from the AED assignment and it was turned over to Jeff Dodge, a male account manager. Trudick received increased responsibilities and had to continue oversight of accounts while she was on leave.

Plaintiffs, Trudick and Foertch, were pregnant.  They applied for maternity leave; thus, their employer had knowledge of their condition.  They were qualified for the positions they held with the Chapter.  Modifications of performance and revenue goals; increased workloads; verbal reprimands; and transfers of accounts to individuals not in the protected class are sufficient adverse employment actions. This Court determines the remarks

attributable to Kathleen Marsh, the E&T Director, with supervisory, decision-making authority over Plaintiffs, constitute direct evidence of discriminatory animus. Thus, a genuine issue of material fact remains for the jury — whether the company's predisposition to pregnancy discrimination motivated the actions taken against Plaintiffs. Summary judgment is denied as to the pregnancy discrimination count in Plaintiffs' First Amended Complaint.

**Unlawful Retaliation**

Plaintiffs contend they suffered employment discrimination in retaliation for engaging in protected activity. To establish a *prima facie* case of unlawful retaliation, a plaintiff must demonstrate: (1) he engaged in a protected activity; (2) defendant knew he engaged in this protected activity; (3) defendant subsequently took an employment action adverse to plaintiff; and (4) a causal connection between the protected activity and the adverse employment actions exists. *Abbott v. Crown Motor Company, Inc.*, 348 F. 3d 537, 542 (6th Cir. 2003) (*rehearing denied* January 21, 2004).

In a meeting in May of 2004, Plaintiffs, Dugan, Trudick and Foertch, complained to the head of Human Resources/ Chief Operating Officer, Suzanne Seifert, about the unlawful, discriminatory conduct of their supervisor, Kathleen Marsh. They presented their issues with her offensive views about pregnancy and maternity leaves. They cited instances in which the female account managers under her authority were given unfair treatment *vis-a-vis* male employees. According to them, the assignment of accounts was a "shell game." The male account manager, Jeff Dodge, was given preferential treatment. Two of the Plaintiffs were required to work while on maternity leave.

After this meeting, perhaps coincidentally, Marsh went on medical leave. Seifert did

discuss the myriad of complaints raised; and told Marsh she would not be returning to the Chapter.

The three plaintiffs continued to receive direction from Marsh, although she was on leave. She removed or switched accounts. Plaintiffs continued to be pressured to perform to higher and higher levels. Trudick and Dugan received reprimands with regard to their performance goals. Ultimately, all the Plaintiffs were terminated from employment for their refusal to sign a confidentiality agreement. Plaintiffs insist all these adverse actions were in retaliation for their engaging in the protected activity of complaining about unlawful employment practices.

Although the burden of establishing a *prima facie* case of discrimination is not onerous (*Nguyen v. City of Cleveland*, 229 F. 3d 559, 563 (6th Cir. 2000), Plaintiffs have not met their burden on the element of the causal connection between the protected activity and the adverse employment action. Initially, the Court must note that Berry did not attend the meeting with Seifert. As for Dugan, Trudick, and Foertch, they were not treated unlike any other sales account managers in the E&T division in the time period following the May 2004 meeting. Performance goals and commissions were based upon the previous year's revenues. Plaintiffs admit they would need to work harder immediately before and immediately after taking a medical leave. Economic pressures on managers to meet goals inevitably resulted from the Chapter's financial woes in the 2004-2005 fiscal years. Finally, every employee and volunteer in the Chapter was required, by the National Red Cross, to execute the confidentiality agreement by June of 2005. That is not sufficiently close in time to have a causal connection to the May 2004 meeting. Moreover, there is no evidence the National Red

Cross knew of Plaintiffs' protected activity; and the announcement, by the National Red Cross, that the confidentiality requirement had to be satisfied by June 30, 2005, was made in February of 2004, three months before the Seifert meeting.  (Transcript 8-10, 22, 23 and 47-48 at Defendant's Reply Brief Tab B).

Thus, summary judgment is granted against all Plaintiffs on the retaliation count of the First Amended Complaint.

**CIIPA Claims**

Plaintiffs allege the Confidentiality Agreement they were required to execute in 2005 is illegal and unenforceable.  They also argue their termination for refusing to sign the Agreement was motivated by an illegal discriminatory animus  —  complaining to Suzanne Seifert about Kathleen Marsh at the May 2004 meeting.

At the outset, Defendant could lawfully require its employees to sign the CIIPA or be terminated.  Plaintiffs were employees at will.  Either the employer or the employee in an at-will relationship may change the terms of the relationship or  terminate the relationship at any time and for any legal reason.  *Lake Land Employment Group of Akron v. Columber*, 101 Ohio St. 3d 242, 247 (2004).  Continuation of an at-will employment relationship is consideration to support a confidentiality agreement, such as the one at bar, which is, in effect, a re-negotiation of employment terms.  The Chapter was within its legal rights to require Plaintiffs to sign the CIIPA or be considered to have voluntarily quit.

The evidence further demonstrates Plaintiffs were given time to review the language of the agreement; an opportunity to pose questions to the National Red Cross counsel; and to consult with their own individual attorneys.  Admittedly, there was a scrivener's error by

which a date line was omitted. Plaintiffs expressed concern that the contract would then have retroactive effect. In reality, Plaintiffs had the ability to add the date line themselves and the terms of the agreement stated it would be effective from date of execution forward.

Plaintiffs argue the 2005 requirement to sign the CIIPA or be fired was merely veiled retaliation for engaging in the protected activity of protesting unlawful discriminatory conduct by Kathleen Marsh. As this Court has noted previously, the directive regarding the CIIPA came from the National Red Cross in February of 2004. This was prior to the meeting where Plaintiffs exercised their rights and there is no evidence the National knew of the circumstances surrounding Plaintiffs' alleged discrimination charges. Therefore, temporal proximity is lacking; and it is pure speculation to presume the Chapter could have predicted these four Plaintiffs would refuse to sign, and then target them for termination. As a practical matter, Plaintiffs intentionally committed an act they knew would result in their discharge, irrespective of any alleged discrimination or protected activity under Title VII or R.C. § 4112. There are no genuine issues of material fact surrounding the presentation of the CIIPA or the non-execution of the document by Plaintiffs. The law of at-will employment in Ohio allows such agreements and the consequences for choosing not to comply with the employer's directive. Summary judgment is granted to Defendant on this count of Plaintiffs' First Amended Complaint.

**Whistleblower Act**

Plaintiffs have voluntarily withdrawn this claim (see ECF DKT #48 at p. 26); so, the Court will not address the merits.

**Public Policy Violations**

Summary judgment is granted to Defendant on Plaintiffs' claim for retaliation in violation of public policy. "The Sixth Circuit has held that § 4112 provides an adequate remedy for violations of that statute such that a common law public policy claim based on alleged violations of § 4112 is not available to a plaintiff. *Garcia v. Third Federal Savings and Loan*, 2007 WL 1235820, *6 , No. 1:06-CV-1990 (N.D. Ohio April 26, 2007) (citing *Carrasco v. NOAMTC Inc.*, 124 Fed. Appx. 297, 304 (6th Cir. 2004)).

**Breach of Contract (Unpaid Commissions)**

Plaintiff Trudick claims she was not paid commissions earned on the Pepper Pike or City of Cleveland projects, nor was she compensated for services on the $200,000 Disaster Service Department grant. Foertch also claims she did not receive commissions for the City of Cleveland work. Defendant correctly points out that Plaintiffs bear the burden of proof, and cannot ask the trier of fact to speculate as to entitlement to compensation or the amount allegedly owed. However, Defendant argues, without evidentiary or legal support, that no commissions are owed on the Pepper Pike project because no revenues were received by the Chapter until *after* Plaintiffs' termination. There are genuine issues of fact as to what commissions are owed and whether Plaintiffs suffered damages because commissions were paid late. Summary judgment is denied on this count.

**Spoliation**

Plaintiffs claim Defendant altered or destroyed records to conceal its unlawful discriminatory conduct. "[T]he elements of a claim for interference with or destruction of evidence are (1) pending or probable litigation involving the plaintiff, (2) knowledge by the defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant

-13-

designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts." *McLeod v. Mt. Sinai Med. Ctr.*, 166 Ohio App. 3d 647, 660-661 (2006) (quoting *Smith v. Howard Johnson Co.*, 67 Ohio St. 3d 28, 29 (1993)).  Plaintiffs, herein, offer no evidence that the Chapter willfully destroyed any documents in order to disrupt their case.  They point to unsigned performance goals and reviews; and they merely speculate that there may be more documents somewhere which Defendant "forgot" or "misplaced."  Without evidence of intentional destruction by Defendants, meant to interfere with Plaintiffs' pending or likely lawsuit, Plaintiffs cannot maintain this claim and summary judgment is granted.

**Intentional/Negligent Infliction of Emotional Distress**

Plaintiffs allege that Defendant's conduct, acts and omissions constitute intentional and/or negligent infliction of emotional distress. "Under Ohio law, a cause of action for intentional infliction of emotional distress may lie only where defendant's conduct is 'extreme and outrageous' in that it goes 'beyond all possible bounds of decency,' is 'atrocious,' and is 'utterly intolerable in a civilized community'; conduct that is merely malicious, aggravated, or intentional or that entails an intent that is tortious or criminal is insufficient to render it actionable." *Abbot*, 348 F. 3d at 545 (citing *Yeager v. Local Union 20*, 6 Ohio St. 3d 369, 453 (1983)). Even assuming all of Plaintiffs' allegations of Defendant's conduct are true, no reasonable juror could find the conduct rises to the extreme and outrageous level necessary to warrant recovery.

In Ohio, to recover for negligent infliction of emotional distress, a plaintiff must either sustain a physical impact as the result of the defendant's negligent conduct or be within the

"zone of danger", i.e., in immediate risk of physical harm.  *Dobran v. Franciscan Medical Center*, 102 Ohio St. 3d 54, 58 (2004).  The fact pattern presented by Plaintiffs' employment situation with the Greater Cleveland Red Cross Chapter does not suggest any physical harm. As the Ohio Supreme Court reflected in *Heiner v. Moretuzzo*, 73 Ohio St. 3d 80, 88 (1995), "while we remain vigilant in our efforts to ensure an individual's 'right to emotional tranquility,' we decline to expand the law to permit recovery on the facts of this case."

Therefore, summary judgment is granted in Defendant's favor on the negligent infliction and intentional infliction of emotional distress claims.

**Damage to Good Reputation**

The Court agrees with Defendant that this count of Plaintiffs' Amended Complaint does not state a discrete tort claim.  The case relied upon by Plaintiffs, *Lawyers Cooperative Publishing Co. v. Muething*, 65 Ohio St. 3d 273, 277-0281 (1992), discussed a counterclaim for negligence, contending  law books were defective and the publisher therefore breached its warranty.  The Court considered if there could be recovery for non-economic loss.  The *Muething* court found, if at all, damage to good reputation is an element of alleged loss flowing from a tort.  It is not an independent cause of action.  Thus, summary judgment is granted as a matter of law.

### III. CONCLUSION

For all the foregoing reasons, the Motion of Defendant, American Red Cross, Greater Cleveland Chapter, is granted in part and denied in part. Plaintiffs Foertch and Trudick may proceed on their pregnancy discrimination claims and breach of contract (unpaid commissions) claims.

**IT IS SO ORDERED.**

**DATE: _January 30, 2008_____**

        <u>s/Christopher A. Boyko</u>
**CHRISTOPHER A. BOYKO**
**United States District Judge**